UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SARA CASTANEDA,

Plaintiff,

v.

KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:22-cv-00258-HBK

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY [1]

(Doc. Nos. 14, 16)

Sara Castaneda ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 14, 16-17). For the reasons set forth more fully below, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the Commissioner's decision.

////

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 19).

## I. JURISDICTION

Plaintiff protectively filed for disability insurance benefits on January 19, 2018, alleging an onset date of March 31, 2016. (AR 241-44). Benefits were denied initially (AR 131-41, 169-73), and upon reconsideration (AR 143-54, 175-80). Plaintiff appeared before an Administrative Law Judge ("ALJ") on January 23, 2020. (AR 40-62). Plaintiff was represented by counsel, and testified at the hearing. (*Id.*). On February 18, 2020, the ALJ issued an unfavorable decision (AR 17-39), and on July 31, 2020 the Appeals Council denied review (AR 8-13). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 66 years old at the time of the hearing. (AR 45). She completed the ninth grade. (*Id.*). Plaintiff has work history as front desk clerk at a hotel. (AR 45-47, 59). Plaintiff testified that she was unable to work during the relevant period because of chronic back pain and "nerve damage." (AR 47). She reported she would fall asleep while laying down after 45 minutes because of her pain medication side effects, and bad weather made her "more depressed" and "her bones hurt." (AR 53-54). Plaintiff testified that she could sit in a chair for 15-20 minutes before she had to get up or lay down; she could stand or walk for 15-20 minutes; and the heaviest she could lift was 10 pounds. (AR 55). She was in constant pain and sometimes could not get out of bed because of the pain approximately 20 days out of a month. (AR 56-57).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence

equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20

C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 31, 2016 through her date last insured of December 31, 2017. (AR 23). At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy/osteoarthritis of the lumbar spine with sciatica of the right side. (AR 23). At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 26). The ALJ then found that, through the date last insured, Plaintiff had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ladders, ropes or scaffolds, stoop and crouch." (AR 27). At step four, the ALJ found that, through the date last insured, Plaintiff was capable of performing past relevant work as a hotel front desk clerk. (AR 31). On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from March 31, 2016, the alleged onset date, through December 31, 2017, the date last insured. (AR 32).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review: whether the ALJ properly considered the medical opinion of Leonel Apodaca, Jr., M.D. (Doc. No. 14 at 9-13).

////

////

## VII.   DISCUSSION

### A.  Medical Opinions

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical

opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In February 2018, Plaintiff's treating physician. Leonel Apodaca, Jr., M.D., opined that Plaintiff could walk without rest or severe pain for 2 city blocks; sit for 20 minutes before needing to get up; stand for 15 minutes before needing to sit down or walk around; sit, stand, and walk for less than 2 hours total in an 8-hour workday; shift positions at will from sitting, standing or walking; rarely lift 10 pounds in an 8-hour workday; rarely twist and stoop; and never crouch, squat, climb stairs, or climb ladders. (AR 803-04). Dr. Apodaca further opined that Plaintiff will likely be off task 10% of a typical workday; she is incapable of even low stress work; her impairments are likely to produce good days and bad days; and she would likely miss more than four days per month if she tried to work full time. (AR 805-06). The ALJ found Dr. Apodaca's opinion unpersuasive because it is inconsistent and unsupported. (AR 30). Specifically,

> Dr. Apodaca's opinions are inconsistent with the claimant's mostly normal physical examination results with findings of lumbar spine point tenderness, full strength with only mildly diminished left lower extremity strength, negative straight leg raises, demonstrated no pain behavior and intermittent findings of hip and knee crepitus, bilateral radicular symptoms and tenderness sacroiliac joints. Dr. Apodaca's opinions are also inconsistent with claimant's report that she could wash dishes, clean her house, occasionally vacuum and mop, occasionally grocery shop, prepare easy meals, and let her small dog

> out in her yard. Dr. Apodaca's opinions are unsupported by his own examinations of the claimant that reflect in mostly normal physical findings.

(AR 30) (internal citations omitted). Plaintiff appears to challenge the consistency and supportability findings concurrently: in particular, she argues "the ALJ's isolated discussion of normal findings is not substantial evidence when it is not representative of the overall record," and the ALJ is not permitted to "cherry pick isolated portions of a report and ignore the evidence favorable to the claimant." (Doc. No. 14 at 11 (*citing, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)). In support of this finding, Plaintiff cites "consistent examination findings of lumbar spine tenderness, thoracic spine tenderness, lumbar spine pain, right leg sciatica, hip and knee crepitations, paraspinal tenderness, rigidity and guarding, bilateral radicular symptoms, left shoulder tenderness, and left supra scapular tenderness." (Doc. No. 14 at 11).

However, the Court's review of these records indicates that of the 46 treatment notes cited, 39 are Dr. Apodaca's own treatment notes that observe <u>only</u> lumbar spine "point tenderness" and/or knee and hip "crepitations," with no additional objective findings or abnormal findings identified. AR 551, 554, 557, 561, 570, 573, 579, 602, 605, 609, 618 (also noting thoracic point tenderness), 621, 624, 630, 654, 656, 659, 662, 665, 668, 727, 730, 733, 736, 739, 742, 745, 748, 751, 754, 760, 764, 767, 770, 783, 786, 789, 792, 795). Moreover, as noted by Defendant, additional records cited by Plaintiff in support of her argument were cited by the ALJ in considering Dr. Apodaca's opinion, including positive findings of lumbar pain and sciatica, along with the bilateral radicular symptoms and tender sacroiliac joints. (Doc. No. 16 at 10); *see, e.g.*, AR 28, 486, 491, 587, 590, 615, 648, 671, 711. As part of the summary of medical evidence, the ALJ also considered Plaintiff's treatment during the relevant adjudicatory period with physical therapy, TENS unit, lumbar trigger point injections, and bilateral lumbar epidural injections;[2] and the ALJ considered objective imaging results including 2016 x-rays of Plaintiff's

---

[2] As part of the analysis of Plaintiff's symptom claims, the ALJ noted Plaintiff reported reduction in pain after different treatment modalities; a previous neurosurgical consult found Plaintiff was not a good surgical candidate and recommending conservative treatment; and evidence from November 2017 indicated Plaintiff was discharged from physical therapy for poor attendance. (AR 29). Plaintiff does not identify or challenge the ALJ's rejection of her subjective complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issues not raised with

lumbar spine showing degenerative facet osteoarthropathy and lumbar spondylosis, and 2017 MRI results showing extensive facet joint osteoarthropathy within the lower lumbar spine but no significant disc protrusion or neural compromise. (AR 27-28 (citing AR 486-87, 538-39, 686-97). Finally, while not identified by Plaintiff in her briefing, the ALJ also cited evidence of normal reflexes, normal range of motion, negative straight leg raises, no demonstrated pain behavior, and full motor strength aside from the mildly diminished strength in the left lower extremity. (AR 28-30, 485-86).

Even under the new regulations, the ALJ may not "cherry-pick" evidence in discounting a medical opinion. *See Buethe v. Comm'r of Soc. Sec.*, 2021 WL 1966202, at *5 (E.D. Cal. May 17, 2021) (collecting cases under new regulations where district courts have "remanded where evidence supporting or consistent with a rejected medical opinion was ignored."); *Timothy P. v. Comm'r Soc. Sec. Admin*., 2022 WL 2116099, at *9 (D. Or. June 13, 2022) ("Although *Woods* made it clear that the hierarchy among physicians' opinions no longer applies in this Circuit, the court did not address whether the new regulations upend the entire body of caselaw relating to medical evidence… It remains true that the ALJs may not cherry-pick evidence in discounting a medical opinion."). Here, however, the Court is unable to discern evidence that was improperly "ignored" by the ALJ in discounting Dr. Apodaca's opinion. Rather, as noted by Defendant, the ALJ reviewed all of the medical evidence from the relevant adjudicatory period, including evidence that could be considered more favorable to Plaintiff. Thus, when viewing the record as a whole, it was reasonable for the ALJ to conclude that the severity of the limitations assessed by Dr. Apodaca were not consistent with the physical examination results and unsupported by Dr. Apodaca's own treatment notes. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony).

As a final matter, the ALJ found Dr. Apodaca's report was inconsistent with Plaintiff's

specificity in Plaintiff's opening brief).

daily activities, including washing dishes, cleaning her house, occasionally vacuuming and mopping, occasionally grocery shopping, preparing easy meals, and letting her small dog out in the yard. An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999). Plaintiff argues the ALJ "failed to identify any activities that contradict Plaintiff's alleged limitations or reflect a degree of activity consistent with full-time work." (Doc. No. 14 at 12 (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."). In support of this finding, the ALJ generally cites Plaintiff's testimony that she can perform household chores, including occasional vacuuming and mopping, occasionally grocery shop, prepare easy meals, and let her small dog out into the yard. (AR 30, 51). However, as noted by Plaintiff, and seemingly not considered by the ALJ, Plaintiff also testified that she could only do the household chores for 10 minutes at a time before she stopped for a 3 or 4-hour break, and during the relevant period she had to stay in bed all day for 20 days out of a month because her medication "knock[ed] her out sometimes." (AR 56-57).

Here, even assuming, arguendo, that the ALJ erred in finding that Plaintiff's daily activities were inconsistent with Dr. Apodaca's opined limitations, any error would be harmless because, as discussed *supra*, the ALJ provided additional reasons, supported by substantial evidence, for finding that Dr. Apodaca's opinion was unpersuasive. See *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (error in considering one of several reasons given in support of ALJ's finding was harmless because the remaining reasons and ultimate determination were supported by substantial evidence); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's finding that Dr. Apodaca's opinion was not persuasive was supported by

substantial evidence after proper consideration of the supportability and consistency factors.

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly considered the medical opinion evidence.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 16) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:     September 25, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE